**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**BRENDA WILLIAMS,**

        **Plaintiff,**

**v.**                                          **Case No:  6:12-cv-398-Orl-22GJK**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

# REPORT AND RECOMMENDATION

**To the United States District Court:**

Brenda Williams on behalf of T.I.L.W. (hereafter "Claimant"), appeals to the District Court from a final decision of the Commissioner of Social Security (hereafter "Commissioner") denying his application for supplemental security income (hereafter "Application").  Doc. No. 1. It is **RECOMMENDED** that the final decision of the Commissioner be **AFFIRMED**.

**I.**     **MEDICAL, OPINION AND OTHER EVIDENCE**

     **A.  Amy Miller**

On March 7, 2008, Amy Miller, Claimant's third grade teacher, completed a teacher questionnaire comparing Claimant to children who do not have impairments.  R. 144-51.  In the domain of acquiring and using information, Ms. Miller opined that Claimant has serious problems reading and comprehending written material, as well comprehending and doing math problems.  R. 145.  Ms. Miller indicated that Claimant has obvious problems giving organized oral explanations and adequate descriptions, recalling and applying previously learned material, and applying problem-solving skills in class discussions.  R. 145.  Ms. Miller stated that

Claimant has slight problems comprehending oral instructions, expressing ideas in written form and learning new material.  R. 145.  Ms. Miller indicated that Claimant has no problem understanding school and content vocabulary, or understanding and participating in class discussions.  R. 145.  Ms. Miller commented that Claimant has difficulty retaining information, often needs directions repeated and gets very confused if given a multi-step task.  R. 145.  Ms. Miller stated that she observed Claimant exhibit a short term memory problem performing many activities, struggle with simple math problems because he frequently forgot what he was taught and struggle with reading comprehension.  R. 145.

In the domain of attending and completing tasks, Ms. Miller opined that Claimant has a very serious problem carrying out multi-step instructions and a serious problem completing work without making careless mistakes.  R. 146.  Ms. Miller indicated that Claimant has slight problems focusing long enough to finish assigned tasks, carrying out single step instructions, organizing materials, completing assignments and working at a reasonable pace/finishing on time.  R. 146.  Ms. Miller stated that Claimant has no problems paying attention when spoken to directly, sustaining attention during play, refocusing to tasks, waiting to take turns, changing from one activity to another without being disruptive and working without distracting himself or others.  R. 146.  Ms. Miller commented that Claimant struggles with multi-step instructions and often only remembers the first step.  R. 146.  Ms. Miller indicated that Claimant makes careless mistakes in reading comprehension and math.  R. 146.  Ms. Miller opined that Claimant has no problem interacting and relating with others or moving about and manipulating objects.  R. 147-48.  In the domain of caring for himself, Ms. Miller opined that Claimant has a serious problem knowing when to ask for help.  R. 149.

**B.  Jeff Oatley, Ph.D.**

On April 17, 2008, Jeff Oatley, Ph.D., conducted a psychological evaluation.  R. 423-26.
Dr. Oatley's mental examination revealed that Claimant reported a normal range of emotions,
but cries easily when scolded.  R. 424.  Dr. Oatley found that Claimant's fund of knowledge was
adequate and his speech coherent, without loose associations, perseverations or impulsivity.  R.
424.  Dr. Oatley did not observe any concentration deficits or orientation problems.  R. 424.  Dr.
Oatley indicated that Claimant did not have any severe memory deficits as Claimant correctly
recalled five sequential numbers, what he had for breakfast, the names of his current and last
teacher, and a list of three items after 90 minutes.  R. 424.

Dr. Oatley conducted and documented Claimant's scores on the Wechsler Intelligence
Scale for Children and Woodcock Johnson Test of Achievement.  R. 424-25.  Dr. Oatley
indicated that the testing appeared valid because Claimant was "cooperative and showed good
concentration.  Academic skills and processing speed was greater than expected given the IQ
level."  R. 426.  Dr. Oatley diagnosed Claimant with asthma, borderline intellectual functioning
and depressive disorder.  R. 426.  Dr. Oatley noted that Claimant can bathe and dress himself.  R.
426.  Dr. Oatley indicated that Claimant has developed and maintained friendships at school, but
not in his neighborhood.  R. 426.  Dr. Oatley stated that Claimant "has some difficulty
completing class work assignments," but his concentration and task persistence at home was
reported to be fair.  R. 426.

**C.  State Consultants**

On May 29, 2008, Thomas Stanley, M.D., filled out a childhood disability evaluation
form.  R. 458-63.[1]  Dr. Stanley diagnosed Claimant with the non-severe impairments of asthma,

---

[1] Patricia Boger, Ph.D. signed as an additional consultant.  R. 459.

constipation, borderline intellectual functioning and depressive disorder, not otherwise specified. R. 458. Dr. Stanley opined that Claimant has less than marked limitations in acquiring and using information, attending and completing tasks, and in health and physical well-being. R. 460-61. Dr. Stanley opined that Claimant has no limitations interacting and relating with others, moving about and manipulating objects, and caring for himself. R. 460-61. In offering these opinions, Dr. Stanley noted Claimant's educational plan and Ms. Miller's teacher questionnaire. R. 463. Dr. Stanley indicated that Ms. Miller's opinion that Claimant has academic delays was not supported by Claimant's scores on the Woodcock Johnson Test of Achievement. R. 463.

On September 15, 2008, Jimmy Jamison, M.D., completed a childhood disability evaluation form. R. 464-69.[2] Dr. Jamison diagnosed Claimant with the severe impairments of borderline intellectual functioning and asthma that was well-controlled. R. 464. Dr. Jamison indicated that Claimant's impairments did not meet or functionally equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (hereafter "Listings"). R. 464. Dr. Jamison opined that Claimant has less than marked limitations in acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, and in health and physical well-being. R. 460-61. Dr. Stanley opined that Claimant has no limitations caring for himself. R. 467.

### D. Accommodation Plan

On March 25, 2010, Claimant's school completed an accommodation plan. R. 483. The accommodation plan indicated that Claimant was in need of accommodations while in fifth grade. R. 483. The accommodation plan stated that Claimant needed extra time to complete assignments, evaluations and tests; needed to complete assignments or tests in a small group or individual setting; needed to be asked if the directions were understood and repeat if necessary;

---

[2] Janice H. Miller, Ph.D. signed as an additional consultant. R. 465.

needed to work with a peer on assignments for motivation and understanding; needed the content subject material read aloud for comprehension; and Claimant's planner needed to be checked to ensure that he copied his homework for the day.  R. 483.

## II.   ADMINISTRATIVE PROCEEDINGS

On January 22, 2008, Claimant filed his Application, alleging a disability onset date of August 14, 1999.  R. 101-07.  The Application was denied initially and on reconsideration.  R. 70-72.  A hearing before an Administrative Law Judge (hereafter "ALJ") was held on April 28, 2010.  R. 3-15.  At the hearing, Ms. Williams testified that Claimant is disabled as a result of his asthma because if he does not take his medication he has watery eyes, sneezes and complains of chest pain.   R. 4, 6.   Ms. Williams testified that Claimant switched elementary schools, is learning better and his grades are pretty good.  R. 5-6.  Ms. Williams testified that Claimant does not suffer from depression or anxiety and does not have any behavioral problems.  R. 6.  Ms. Williams testified that Claimant plays football and basketball during recess, using his nebulizer prior to playing.  R. 7.  Claimant testified that he attends elementary school and got an "A" in math, his favorite subject.  R. 10-11.  Claimant testified that he plays board or card games during recess.  R. 11.   Claimant testified that he performs chores without being reminded and has friends at school and at home.  R. 12.  Claimant testified that he plays basketball and uses his inhaler before playing, and sometimes experiences chest pain or shortness of breath when he plays too much.  R. 13-14.

On May 17, 2010, the ALJ issued his decision.  R. 28-40.  The ALJ found that Claimant suffers from the severe impairment of borderline intellectual functioning and Claimant's asthma is non-severe because it is well controlled.  R. 31.   The ALJ found that Claimant's severe impairment does not meet a Listing.  R. 31.   The ALJ then determined whether Claimant's

severe impairment functionally equalled a Listing.  R. 31.  In making this determination, the ALJ acknowledged that Claimant had an educational plan at school that provided for the following accommodations:  "making sure directions are understood, reviewing key points orally, peer tutoring, pairing students to check work, checking for understanding, using self monitoring skills, and weekly reports."  R. 32-33.  The ALJ reviewed the opinion evidence and gave Ms. Miller's opinion some weight, Dr. Oatley's opinion significant weight except for his opinion that Claimant has depressive disorder, and the state consultants' opinions partial or some weight.  R. 33-34.

The ALJ determined that Claimant has less than marked limitations in acquiring and using information, and attending and completing tasks.  R. 34-35.  The ALJ concluded that Claimant has no limitations in interacting and relating with others, moving about and manipulating objects, caring for himself, and health and physical well-being.  R. 36-39.  As a result, the ALJ found that Claimant is not disabled.  R. 39.  On February 15, 2012, the Appeals Council denied Claimant's request for review.  R. 16-21.  Claimant timely filed the instant appeal.  Doc. No. 1.

## III.   LEGAL STANDARDS

### A.  THE ALJ'S DISABILITY ANALYSIS

A child under the age of 18 is considered disabled if he or she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).  At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  Substantial gainful activity ("SGA") is defined as work activity that is both substantial and

gainful.  "Substantial work activity" is work activity that involves performing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually performed for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b).  Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA.  20 C.F.R. §§ 404.1574, 404.1575, 416.974, 416.975.  If an individual is not engaging in SGA, the analysis proceeds to the second step.

At step-two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe."  20 C.F.R. §§ 404.1520(c), 416.920(c).  For an individual who has not attained age 18, a medically determinable impairment or combination of impairments is not severe if it is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations. 20 C.F.R. § 416.924(c).

At steps three and four, the ALJ must determine whether the claimant's impairment or combination of impairments meets or functionally equals the criteria of an impairment in the Listings.  20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926.  If the claimant's impairment or combination of impairments meets or medically equals the criteria of a Listing and meets the duration requirement (20 C.F.R. §§ 404.1509, 416.909), the claimant is disabled.  If it does not, the analysis proceeds to the next step.

In determining whether an impairment or combination of impairments functionally equals the Listings, the ALJ must assess the claimant's functioning in terms of six domains:   1) acquiring and using information; 2) attending and completing tasks; 3) interacting and relating with others; 4) moving about and manipulating objects; 5) caring for oneself; and 6) health and

physical well-being.  20 C.F.R. § 416.926a(b)(1).  A child's impairments functionally equals a listed impairment, and thus constitutes a disability, if the child's limitations are "marked" in two of the six domains, or if the child's limitations are "extreme" in one of the six domains.  20 C.F.R. § 416.926a(d).

In assessing whether the claimant has "marked" or "extreme" limitations, the ALJ must consider the functional limitations from medically determinable impairments, including any impairments that are not severe.  20 C.F.R. § 416.926a(a).  The ALJ must consider the interactive and cumulative effects of the claimant's impairment or multiple impairments in any affected domain.  20 C.F.R. § 416.926a(c).

20 C.F.R. § 416.926a(2) explains that a child has "marked limitation" in a domain when his or her impairment(s) "interferes seriously" with the ability to independently initiate, sustain or complete activities.  A child's day-to-day functioning may be seriously limited when the impairment(s) limits only one activity or when the interactive and cumulative effects of the impairment(s) limit several activities.  The regulations also explain that a "marked" limitation also means: a limitation that is "more than moderate" but "less than extreme"; or the equivalent of functioning that would be expected on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.  20 C.F.R. § 416.926a(e)(2).

20 C.F.R. § 416.926a(e)(3) explains that a child has an "extreme" limitation in a domain when his impairment(s) interferes "very seriously" with his ability to independently initiate, sustain, or complete activities.  A child's day-to-day functioning may be very seriously limited when his impairment(s) limits only one activity or when the interactive and cumulative effects of his impairment(s) limit several activities.  The regulations also explain that an "extreme" limitation also means:

1. A limitation that is "more than marked."

2. The equivalent of functioning that would be expected on standardized testing with scores that are at least three standard deviations below the mean.

3. A valid score that is three standard deviations or more below the mean on a comprehensive standardized test designed to ensure ability or functioning in that domain, and his day-to-day functioning in domain-related activities is consistent with that score.

4. For the domain of health and physical well-being, episodes of illness or exacerbations that result in significant, documented symptoms or signs substantially in excess of the requirements for showing a "marked" limitation.

20 C.F.R. § 416.926a(e)(3).   Thus, for a disability finding, a child's impairments functionally equal a Listing if the child's limitations are "marked" in two of the six domains, or if the child's limitations are "extreme" in one of the six domains.  *Id.*

### B.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and

even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).  The District Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).

## IV.   <u>ANALYSIS</u>

Claimant's argument is two-pronged.  Claimant argues that the ALJ failed to apply the correct legal standards by failing to state the weight given to a school accommodation plan, narrowly focusing on the portions of Ms. Miller's opinion that supported finding less severe limitations and relying on the state consultants' opinions in finding no limitations or less than marked limitations in the six domains of functioning.  Doc. No. 18 at 10-17.  Claimant also argues that the ALJ's decision is not supported by substantial evidence because the school accommodation plan and Ms. Miller's opinion support a finding that he has marked limitations with acquiring and using information, and attending and completing tasks.  Doc. No. 18 at 17-19.

### A.  Accommodation Plan

Claimant contends the accommodation plan is probative evidence that is contrary to the ALJ's decision and, therefore, the ALJ was required to state the weight he gave to it.  Doc. No. 18 at 11-12.  Claimant points out that 20 C.F.R. § 416.924a(b)(7)(iv) required the ALJ to

consider the accommodation plan.  Doc. No. 18 at 12.  Claimant asserts the ALJ erred by failing to weigh or include any limitations from the accommodation plan.  Doc. No. 18 at 12.

When determining the effects of a claimant's impairment on his functioning, the Commissioner considers whether the claimant attends school or receives accommodations due to impairments.  20 C.F.R. § 416.924a(b)(7)(iv).  The Commissioner will ask for information from teachers or other school personnel about how the claimant is functioning when compared to children who do not have an impairment.  20 C.F.R. § 416.924a(a)(2)(iii).  If a teacher, school counselor or early intervention team member provides an opinion regarding a claimant's functioning, the Commissioner will evaluate the opinion after considering the "nature and extent of the relationship between the source and [claimant], the source's qualifications, the source's area of specialty or expertise, the . . . relevant evidence [presented] to support [the] opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion."  SSR 06-03P, 2006 WL 2329939 at *5 (2006).  The ALJ should generally explain the weight given to these opinions or "ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning, when such opinions may have an effect on the outcome of the case."  SSR 06-03P, 2006 WL 2329939 at *6.

Claimant does not cite any law requiring an ALJ to state the weight given to an accommodation plan, such as the one in this case.  20 C.F.R. § 416.924a(b)(7)(iv) only requires an ALJ to consider an accommodation plan, not state the weight given to it.  *See also* SSR 09-2P, 2009 WL 369032 at *10 (2009)(indicating the Commissioner will consider an accommodation plan when requesting information from a claimant's school).  In his decision, the ALJ stated that he considered statements from school teachers, family members, and Claimant, as well as any

other relevant evidence about how the Claimant functions over time and in different settings.  R. 31.  The ALJ also stated that he "assessed the interactive and cumulative effects of . . . claimant's medically determinable impairment(s), including any impairments that are not 'severe' in all of the affected domains.  In evaluating the claimant's limitations, the undersigned has considered the type, extent, and frequency of help the claimant needs to function."  R. 32.  Subsequently, the ALJ summarized Claimant's testimony, Ms. Williams' testimony and the accommodation plan.  R. 32-33.  It is apparent that the ALJ considered the accommodation plan, as required by 20 C.F.R. § 416.924a(b)(7)(iv), when rendering his decision.

Although the accommodation plan sets forth the accommodations Claimant needs, it does not indicate the severity of Claimant's limitations in the six domains of functioning.[3]  The accommodation plan also does not provide any information that permits the ALJ to evaluate its validity as provided in SSR 06-03P.  Opinions from non-medical sources are considered because they "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function."  SSR 06-03P, 2006 WL 2329939 at *2.  The accommodation plan does not provide any of the aforementioned information and, therefore, is not an opinion.  Accordingly, the ALJ was not required to state the weight given to it or include limitations from it in his decision.

**B.  Ms. Miller's Opinion**

Claimant contends that "Ms. Miller's opinion supported 'very serious' problems in one domain and 'serious' problems in two other domains."  Doc. No. 18 at 15 (internal citations omitted).  Claimant asserts the ALJ "relied on Ms. Miller's other opinions of less severe limitations.  But Ms. Miller's opinion did not merely support less than marked limitations or no

---

[3]  Because the accommodation plan does not state the severity of Claimant's limitations, it is not apparent there is any conflict between it and the ALJ's findings regarding the severity of Claimant's limitations in assessing the six domains of functioning.

limitations.  Her opinion actually supported extreme and marked limitations."  Doc. No. 18 at 15.

Claimant argues that the ALJ's decision is not supported by substantial evidence because he

"disregarded the opinions supporting disability."  Doc. No. 18 at 16.

After summarizing Ms. Miller's opinion, the ALJ gave it "some weight because Ms.

Miller spent a significant amount of time with [Claimant] on a regular basis."  R. 33.   In

determining that Claimant is less than markedly limited in acquiring and using information, the

ALJ acknowledged Ms. Miller's opinion that Claimant "had some problems in this domain."  R.

35.   The ALJ noted, however, that Ms. Miller wrote that Claimant "had no problems

understanding school and content vocabulary and understanding and participating in class

discussions.  The child is in regular classes, and his grandmother testified that his grades are

good." R. 35.

In determining that Claimant is less than markedly limited in attending and completing

tasks, the ALJ likewise acknowledged that Ms. Miller "noted problems in this area . . . ." R. 36.

The ALJ noted, however, that Ms. Miller indicated that Claimant "had no problem paying

attention when spoken to directly, sustaining attention during play and sports activities, and

working without distracting himself or others.  The child testified that he does his chores at home

without being reminded." R. 36.

The ALJ did not disregard the portions of Ms. Miller's opinion indicating that Claimant

had serious or very serious problems in certain areas of acquiring and using information, and

attending and completing tasks.  *See* R. 145-46.  Rather, the ALJ acknowledged that Ms. Miller

documented problems in these areas.  R. 35-36.  The ALJ, however, did not give these aspects of

Ms. Miller's opinion great weight because Ms. Miller also documented related areas of

functioning in which Claimant had no problem.  R. 35-36.  The ALJ also pointed out testimony

from Ms. Williams and Claimant that conflicted with Ms. Miller's opinions that Claimant had serious or very serious problems in the areas she identified. R. 35-36. Further, the ALJ gave significant weight to Dr. Oatley's findings that Claimant showed no concentration deficits or severe memory deficits, and Claimant's attention span was appropriate. R. 34, 424. The ALJ also gave some weight to Dr. Stanley's opinion, wherein he indicated that Ms. Miller's opinion that Claimant had academic delays was not supported by Claimant's results on the Woodcock Johnson Test of Achievement. R. 34, 463.

The ALJ was presented with conflicting evidence that could support a finding that Claimant is disabled. The ALJ stated the weight given to all of the opinions in the record and indicated why he discounted Ms. Miller's opinions that Claimant had serious or very serious problems in certain areas of acquiring and using information, and attending and completing tasks. It is the ALJ's responsibility to "weigh the evidence, to resolve material conflicts in the testimony, and to determine the case accordingly." *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). In light of the foregoing, the undersigned cannot conclude that the ALJ failed to apply the correct legal standard to Ms. Miller's opinion or that the decision is unsupported by substantial evidence.

### C.  State Consultants

Claimant contends that opinions from non-examining medical consultants are entitled to little weight and are not substantial evidence, taken alone, to support a decision, citing *Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990). Doc. No. 18 at 16. Claimant asserts that the state consultants' "opinions deserve less weight" than the opinions expressed by Ms. Miller and in the accommodation plan because they did not see or perform any assessments on Claimant. Doc. No. 18 at 16. Claimant argues that the ALJ relied on these opinions when he gave them

some weight and, therefore, erroneously based his decision on their opinions.  Doc. No. 18 at 16-17.

The ALJ did not solely rely on the state consultants' opinions in determining Claimant is not disabled.  Rather, the ALJ relied upon and gave weight to Ms. Miller, Dr. Oatley and the state consultants' opinions.  R. 33-34.  An ALJ can rely on a non-examining doctor's opinion if it does not conflict with an examining doctor's opinion.  *Milner v. Barnhart*, 275 F. Appx. 947, 948 (11th Cir. 2008).  Claimant does not assert that the state consultants' opinions conflict with Dr. Oatley's opinion and the undersigned cannot find a conflict.  Thus, the ALJ did not err in relying on their opinions.  Further, it is the ALJ's responsibility, not the Court, to weigh the evidence.  *See Wheeler*, 784 F.2d at 1075.  The ALJ determined that Ms. Miller's opinions that Claimant had serious or very serious problems in certain areas of acquiring and using information, and attending and completing tasks were not entitled to great weight and, as set forth above, this finding is supported by substantial evidence.

## V.   <u>CONCLUSION</u>

The ALJ was only required to consider the accommodation plan, not state the weight given to it.  *See* 20 C.F.R. § 416.924a(b)(7)(iv).  The ALJ's decision reflects that he considered the accommodation plan.  The ALJ properly stated the weight given to Ms. Miller, Dr. Oatley and the state consultants' opinions.  The ALJ was not required to completely adopt Ms. Miller's opinion and, in light of the conflicting evidence, the undersigned cannot conclude that the ALJ's decision is unsupported by substantial evidence.  Finally, the ALJ properly relied on the state consultants' opinions as they did not conflict with an examination doctor's opinions.  *See Milner*, 275 F. Appx. at 948. Accordingly, the undersigned **RECOMMENDS**:

1.     The final decision of the Commissioner be **AFFIRMED**; and

2.      The Clerk be directed to enter judgment for the Commissioner and close the case.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**RECOMMENDED** in Orlando, Florida on May 9, 2013.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

Richard A. Culbertson
Suite E
3200 Corrine Dr
Orlando, FL 32803

John F. Rudy, III
Suite 3200
400 N Tampa St
Tampa, FL 33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Jerome M. Albanese, Branch Chief
Marcus M. Johns, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia 30303-8920

The Honorable Gerald F. Murray
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Desoto Building #400
8880 Freedom Crossing
Jacksonville, FL 32256-1224